## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Integrated Nursing & Health Services Inc., | Civil No. 17-683 (DWF/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Centers for Medicare & Medicaid Services, | |
| Defendant. | |

_____

Todd Franck, Esq., Franck Law Office, counsel for Plaintiff.

Ana H. Voss and James S. Alexander, Assistant United States Attorneys, United States Attorney's Office, counsel for Defendant.
_____

## INTRODUCTION

This case involves a dispute arising from Defendant Centers for Medicare & Medicaid Services' ("CMS") decision to suspend Medicare reimbursements to Plaintiff Integrated Nursing & Health Services, Inc. ("INHS") after CMS concluded that there were credible allegations of Medicare fraud. INHS has moved for a temporary restraining order releasing the suspended payments. CMS argues, among other things, that the Court lacks subject matter jurisdiction. For the reasons discussed below, the Court concludes that it lacks subject matter jurisdiction. The Court therefore denies Plaintiff's Motion for Temporary Restraining Order (Doc. No. 13) and dismisses Plaintiff's Amended Complaint (Doc. No. 12 ("Am. Compl.")) without prejudice.

## BACKGROUND

### A. Factual Background

INHS is a Minnesota corporation that provides home-healthcare services in mostly Hennepin County, Minnesota. (*See* Am. Compl. ¶ 7.) INHS employs 17 people and provides services to approximately 40 homebound patients. (Doc. No. 17 ¶¶ 4-5.) CMS is a federal agency vested with overseeing, among other things, the Medicare reimbursement program. Here, CMS used AdvanceMed, a Medicare contractor, as its main contact point between the parties.

Pursuant to Medicare's regulations, CMS may suspend Medicare reimbursements "in whole or in part" if it has been "determined that a credible allegation of fraud exists against a provider or supplier." 42 C.F.R. § 405.371(a)(2). The suspension can occur with or without prior notice. If, as here, the suspension occurs without prior notice, CMS must still offer the healthcare provider the opportunity to submit rebuttal information "as to why the suspension should be removed." *Id.* § 405.372(b)(2). If CMS decides, however, that despite the rebuttal evidence, the suspension will continue, then the healthcare provider does not have a right to appeal until a final determination on the fraud allegations. *See id.* § 405.375(c).[1]

---

[1] A healthcare provider, however, is not without recourse. CMS is required to reevaluate the suspension every 180 days to determine, among other things, whether good cause exists to lift the suspension in whole or in part. *Id.* § 405.371(b)(2)(i). One of the bases for good cause is that the "beneficiary access to items or services would be so jeopardized by a payment suspension in whole or part as to cause a danger to life or health." *Id.* § 405.371(b)(1)(ii).

On January 31, 2017, AdvanceMed notified INHS by letter that CMS had suspended Medicare reimbursements after receiving credible allegations of Medicare fraud. (Doc. No. 12-1 (the "Suspension Letter").) The Suspension Letter identified five examples of suspected submissions and stated that while the investigation was ongoing, all of Plaintiff's Medicare reimbursements would be reviewed and withheld in an escrow account. The Suspension Letter also stated that the suspension had been in place since January 24, 2017. The Suspension Letter gave the Plaintiff an opportunity to reply, but also explained that the Plaintiff had no right to appeal. (*Id.*)

On February 6, 2017, Plaintiff replied essentially asking for more details about the fraud allegations. (Doc. No. 12-2.) Plaintiff also submitted documentation to authenticate the allegedly fraudulent submissions identified in the Suspension Letter. (*Id.*) AdvanceMed wrote back on February 24, 2017, stating that the suspension would continue based on federal indictments alleging that INHS's owner Roylee Belfrey was involved in a scheme to commit Medicare fraud. (Doc. No. 12-3.) AdvanceMed also stated that CMS would not review the documentation provided by Plaintiff because CMS had reason to question the documents' accuracy given the indictments. (*Id.*) The letter reiterated that the decision to suspend payments was not appealable. (*Id.*)

### B.     Plaintiff's Complaint

On March 30, 2017, Plaintiff filed its Amended Complaint alleging four claims that all essentially seek the same remedy: an order releasing the escrowed payments. First, Plaintiff seeks mandamus relief to release the suspended payments based on CMS's refusal to review the documentation supporting the allegedly fraudulent claims. Second,

3

Plaintiff alleges that it was defrauded by CMS when CMS stated in the Suspension Letter that it would review rebuttal documentation, but then refused to do so. As a result of the fraud, INHS alleges that it has suffered $228,000 in damages (the amount of the suspended payments). Third, Plaintiff alleges that CMS breached an unidentified statutory and fiduciary duty by failing to review the rebuttal documents. And fourth, Plaintiff alleges that its constitutional due-process and equal-protection rights were violated when CMS did not undertake a proper review of the rebuttal evidence.

On April 4, 2017, Plaintiff moved for a temporary restraining order requiring Defendant to release the suspended funds. (Doc. No. 13.) Plaintiff argues that unless the suspended funds are released, it will have to close. In its response, CMS argues that the Court lacks subject matter jurisdiction. (Doc. No. 22.)[2]

## DISCUSSION

**I.    Legal Standard**

Subject matter jurisdiction is a threshold issue that can be raised sua sponte by the Court's own motion. *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011); *see also* 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3522 (3d ed. 1998 & Supp. 2017). "It is well established that a court has a special obligation to consider whether it has subject matter jurisdiction in every case." *Hart*, 630 F.3d at 1089. Federal courts draw their jurisdiction from two sources: the U.S.

---

[2]    The Court will cite to Plaintiff's Memorandum in Support of Motion for Temporary Restraining Order (Doc. No. 15) as "Memo." The Court will cite to Defendant's Response to Motion for Temporary Restraining Order (Doc. No. 22) as "Opp."

Constitution and a particular statute. Wright & Miller § 3522. A court must have both a constitutional and statutory basis to exercise jurisdiction. *Id.* At issue here is whether the Court has a statutory basis to exercise jurisdiction.

The party asserting jurisdiction has the burden of proof. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). Subject matter jurisdiction may be challenged either on the face of the plaintiff's complaint or the factual truthfulness of its allegations. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). For a facial challenge—that is, even if the allegations were true, they lack an essential element for jurisdiction—a court reviews the pleadings alone and assumes the allegations are true. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *accord Osborn*, 918 F.2d at 729 n.6. For a factual challenge to jurisdiction, the court may consider matters outside the pleadings and weigh the accuracy of the allegations. *Titus*, 4 F.3d at 593; *accord Osborn*, 918 F.2d at 729 n.6.

## II. Subject Matter Jurisdiction

CMS appears to argue that Plaintiff's Amended Complaint cannot survive a facial challenge. (*See* Opp. at 11.) Thus, the Court will rely on only the pleadings and assume the allegations are true. *See Titus*, 4 F.3d at 593. Broadly construing Plaintiff's Amended Complaint (which identifies only 28 U.S.C. § 1331 as its basis for jurisdiction), Plaintiff identifies three bases for jurisdiction. First, Plaintiff seeks a mandamus order under 28 U.S.C § 1361. Second, Plaintiff alleges fraud and breach-of-duty claims under, presumably, 28 U.S.C. §§ 1331 (federal question jurisdiction) or 1346 (jurisdiction based

5

on the United States being the defendant). And third, Plaintiff claims its constitutional rights have been violated.

### A. Mandamus Jurisdiction under 28 U.S.C. § 1361

Plaintiff seeks a writ of mandamus directing CMS to release the suspended funds. (Am. Compl. ¶ 37.) Federal district courts have jurisdiction to issue mandamus relief compelling "an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus under § 1361 is appropriate only in extraordinary situations. *Mitchael v. Colvin*, 809 F.3d 1050, 1054 (8th Cir. 2016). Mandamus may issue "when the plaintiff can establish (1) 'a clear and indisputable right to the relief sought,' (2) the state officer 'has a nondiscretionary duty to honor that right,' and (3) there is 'no other adequate remedy.'" *Id.* (quoting *Castillo v. Ridge*, 445 F.3d 1057, 1060-61 (8th Cir. 2006)). "[T]he duty owed to the plaintiff must be ministerial and a positive command so plainly prescribed as to be free from doubt." *Id.* (quoting *Keeny v. Sec'y of the Army*, 437 F.2d 1151, 1152 (8th Cir. 1971)). Put another way, the official's duty must be "clear" and "nondiscretionary." *See id.* For claims arising under the Medicare Act, a court's jurisdiction is usually limited to 42 U.S.C. § 405(g), which contains exhaustion requirements. *Heckler v. Ringer*, 466 U.S. 602, 620 (1984). Despite this general rule, courts have allowed plaintiffs to seek mandamus relief even if they do not meet the requirements of § 405(g). *Colvin*, 809 F.3d at 1055.

Here, Plaintiff argues that CMS owed a nondiscretionary duty to "properly and completely respond to" INHS's rebuttal information. (Am. Compl. ¶ 31.) The gravamen of Plaintiff's complaint is that CMS did not review or credit Plaintiff's rebuttal evidence.

6

CMS stated that it did not review Plaintiff's rebuttal evidence because CMS doubted the accuracy of the records based on the indictment for Medicare fraud. (Doc. No. 12-3.) In deciding whether to suspend INHS's Medicare reimbursements, CMS was required to exercise discretion in evaluating whether there were credible allegations of fraud and whether suspension was warranted. *See* 42 C.F.R. § 405.372(a)-(b). In exercising its discretion, CMS determined that Plaintiff's records could not be given any weight. Because CMS's duty was discretionary, the Court may not exercise jurisdiction under 28 U.S.C. § 1361.[3]

### B.     Fraud and Breach-of-Duty Claims

Plaintiff also argues that CMS committed fraud, breached a statutory or fiduciary duty, and violated Plaintiff's Fifth Amendment rights all based on CMS suspending Plaintiff's Medicare reimbursements. As a general matter, CMS's decision to suspend Medicare reimbursements is only the start of its review process. 42 C.F.R. § 405.372(c). If CMS ultimately determines that a healthcare provider has been overpaid as a result of Medicare fraud, the provider has the opportunity to contest that conclusion through a series of appeals. *See* 42 C.F.R. Part 405, Subpart I. After exhausting those appeals, the healthcare provider can seek judicial review. 42 U.S.C. § 405(g). Given this administrative scheme, the healthcare provider generally cannot skip the process and head straight to court. To make sure of this, Congress has expressly prohibited

---

[3]     The Court also notes that Plaintiff has failed to demonstrate that it has no other remedy other than mandamus. Indeed, a healthcare provider has access to four layers of administrative review once CMS makes a final decision that the healthcare provider has been overpaid due to Medicare fraud. *See* 42 C.F.R. Part 405, Subpart I.

7

reimbursement claims from being brought under 28 U.S.C. §§ 1331 (federal question jurisdiction) or 1346 (jurisdiction based on the United States being a defendant). 42 U.S.C. § 405(h). A court therefore usually cannot exercise jurisdiction over a claim for Medicare reimbursements unless the plaintiff meets the requirements of § 405(g). *See Ringer*, 466 U.S. at 614-15. Moreover, a plaintiff cannot avoid this general prohibition by recasting its claims for reimbursements as some different cause of action. *Clarinda Home Health v. Shalala*, 100 F.3d 526, 529 (8th Cir. 1996). That is, if at the heart of plaintiff's claim, the plaintiff is seeking Medicare reimbursements, the plaintiff usually must comply with § 405(g). *See id.* ("The Supreme Court has held that section 405(h) extends to any action seeking to recover on any [benefit] claim." (internal quotation marks omitted)).

Here, Plaintiff's claims for fraud and breach of duty would normally be brought under 28 U.S.C. §§ 1331 (federal question jurisdiction) or 1364 (jurisdiction based on the United States as a defendant). Thus, the Court must examine whether those claims are really just repackaged claims for reimbursements that would otherwise be barred by § 405(h). Plaintiff's fraud and breach-of-duty claims both seek damages in the amount of suspended payments and therefore are repackaged claims. (Am. Compl. ¶¶ 49, 53.) As a result, Plaintiff must show that it complied with the jurisdictional requirements of § 405(g) or that an exception applies. *See Clarinda Home*, 100 F.3d at 529.

Courts have jurisdiction under § 405(g) if two elements are met: (1) the plaintiff has presented the claim to the appropriate agency (in this case, CMS); and (2) the plaintiff has exhausted all administrative proceedings to a final determination regarding

the claim. *Degnan v. Burwell*, 765 F.3d 805, 808 (8th Cir. 2014). CMS's decision to suspend Medicare reimbursement is not a final determination. *Clarinda Home*, 100 F.3d at 530. Indeed, CMS must still conduct an investigation to substantiate or refute the fraud, determine the overpayment, and then allow the plaintiff the opportunity to contest the determination through the administrative process. *See* 42 C.F.R. Part 405, Subpart I. Here, because Plaintiff's Amended Complaint centers on CMS's decision to suspend Medicare payments, which is not a final decision, Plaintiff has not exhausted its administrative remedies.

"Courts cannot waive the jurisdictional presentment requirement, but may, in exceptional circumstances, waive the exhaustion of administrative remedies requirement." *Degnan*, 765 F.3d at 808. A court may waive the exhaustion requirement when the plaintiff establishes: "(1) [its] claims to the district court are collateral to [its] claim of benefits; (2) that irreparable injury will follow; and (3) that exhaustion will otherwise be futile." *Id.* (quoting *Titus*, 4 F.3d at 592). Here, Plaintiff's claims are not collateral to its claim for benefits—they are precisely the same claim. *See id.* at 808-09 (affirming a lower court's conclusion that the plaintiff's claim that his Medicare reimbursement had been miscalculated was not collateral to a claim under § 405(g)). Thus, the Court will not waive the exhaustion requirements, and the Court therefore lacks subject matter jurisdiction over Plaintiff's fraud and breach-of-duty claims.

### C. Constitutional Claim

Plaintiff also alleges that its Fifth Amendment rights have been violated. Specifically, CMS allegedly violated INHS's equal-protection and due-process rights by

9

failing to undertake a proper review of INHS's rebuttal evidence. (Am. Compl. ¶ 55.) Like its fraud and breach-of duty claims, Plaintiff's constitutional claim is just another repackaged attempt to seek the suspended Medicare reimbursements. And just like with the fraud and breach-of-duty claims, a plaintiff generally cannot re-characterize a claim for reimbursement as a constitutional violation to avoid the exhaustion requirements in § 405(g). *Ringer*, 466 U.S. at 615 ("In [*Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975)] we held that a constitutional challenge . . . was a 'claim arising under' Title II of the Social Security Act within the meaning of 42 U.S.C. § 405(h), even though we recognized that it was in one sense also a claim arising under the Constitution.").

But even if a plaintiff has not met the requirements of § 405(g), it may proceed with an otherwise barred claim if the plaintiff: "(1) raises a colorable constitutional claim collateral to [its] substantive claim of entitlement; (2) shows that irreparable harm would result from exhaustion; and (3) shows that the purposes of exhaustion would not be served by requiring further administrative procedures." *Clarinda Home*, 100 F.3d at 531.

Here, Plaintiff's claim is that its due-process rights were violated by CMS suspending its Medicare reimbursements without proper review of INHS's rebuttal evidence. The Eighth Circuit, however, has concluded that the suspension of Medicare benefits during a fraud investigation does not violate a provider's due-process rights. *See id.* (concluding that a plaintiff's due-rights were not violated by suspending Medicare payments without a hearing during a fraud investigation). Plaintiff therefore fails to raise

a colorable constitutional claim to warrant an exception to § 405(g).[4] The Plaintiff therefore has failed to demonstrate that the Court has subject matter jurisdiction.[5]

**ORDER**

Based on the files, record, and proceedings herein, the Court finds that it lacks subject matter jurisdiction over Plaintiff's Amended Complaint. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Amended Complaint (Doc. No. [12]) is **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiff's Motion for a Temporary Restraining Order (Doc. No. [13]) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 13, 2017          s/Donovan W. Frank
                               DONOVAN W. FRANK
                               United States District Judge

---

[4] Plaintiff also alleges that CMS violated Plaintiff's equal protection rights, but provides no additional allegations. Thus, Plaintiff has failed to allege a "colorable constitutional claim." *See Clarinda Home*, 100 F.3d at 531. The Court finds that, like Plaintiff's due-process claim, Plaintiff's equal-protection claim fails to confer subject matter jurisdiction.

[5] The Court acknowledges that it is particularly concerned for the patients for whom Plaintiff provides treatment, who might lose services if the Medicare suspension continues. Further, the Court sadly notes that the Medicare suspension may well affect Plaintiff's employees, many of whom care for the patients the Court is concerned about. But such concerns cannot alter the outcome that the Court does not have subject matter jurisdiction over Plaintiff's claim for suspended Medicare reimbursements.